328 S.E.2d 195

**UNITED HOSPITAL CENTER, INC.,
and Davis Memorial Hospital, Inc.**

v.

**Sally K. RICHARDSON, Chairperson,
Larry Fizer and William L. Gilligan,
Board Members, West Virginia Health
Care Cost Review Authority, Hereto-
fore Duly Designated as the State
Health Planning and Development Au-
thority.**

No. 16588.

Supreme Court of Appeals of
West Virginia.

March 22, 1985.

Herbert G. Underwood; Irene M. Keely; William E. Galeota, Steptoe & Johnson, Clarksburg, Joseph A. Wallace, Elkins, for petitioners.

John Kozak, Gen. Counsel, W.Va. Health Care Cost Review Authority, Charleston, for respondents.

Bradley Russell, Asst. Atty. Gen., Charleston, amicus curiae.

McHUGH, Justice:

In this original proceeding in mandamus, the petitioners, United Hospital Center, Inc., and Davis Memorial Hospital, Inc., ask this Court to direct the respondents to process the petitioners' application for a certificate of need concerning the purchase of certain medical equipment. By order entered on January 16, 1985, this Court directed the respondents to show cause why relief should not be awarded. This Court has before it the petition and response, all matters of record and the briefs and argument of counsel.

A brief *amicus curiae* was filed by the Attorney General of West Virginia.

I

The petitioners are hospitals which provide a variety of medical services to the citizens of north central and northeast central West Virginia.

The respondents include the chairperson and members of the West Virginia Health Care Cost Review Authority (hereinafter "HCCRA"). HCCRA is "an autonomous division" of the West Virginia Department of Health. *W.Va.Code*, 16–29B–5 [1983]. Pursuant to *W.Va.Code*, 16–29B–11 [1983],[1] HCCRA is West Virginia's public health "planning and development agency" and, as such, is required to administer this State's certificate of need program (*W.Va. Code*, 16–2D–1 [1977], *et seq.*) concerning the acquisition, offering or development of certain health services.

By "letter of intent" dated November 15, 1984, petitioner United Hospital Center, Inc., informed the respondents that United intended to seek a certificate of need for the acquisition of a Mobile Magnetic Resonance Imaging Unit (hereinafter "MRI unit"). A MRI unit is a relatively new and sophisticated diagnostic tool used in the detection of disease in the human body.[2] According to the petitioners, the quality of health care in West Virginia would be enhanced by the availability in this State of MRI services.

Thereafter, on November 30, 1984, the petitioners submitted to the respondents an application for a certificate of need. As reflected in that application, petitioner United Hospital Center, Inc., sought the acquisition of a MRI unit and, in addition, the transfer to petitioner Davis Memorial Hospital, Inc., of "operating responsibility" for a "Mobile Computerized Tomography (CT) Unit"[3] owned by United.[4] By letter dated November 30, 1984, the respondents acknowledged receipt of the application and stated that the application would be reviewed for completeness.

However, in December 1984 the respondents, by order, declared a moratorium

---

1. *See also W.Va.Code,* 16–2D–2(hh) [1981].

2. The petition describes MRI units as follows:
    Simply stated, MRI relies on the monitoring of the effects of a strong magnetic field on the protons in the human body. Like CT (computerized tomography) scanning, MRI uses a computer to compile multiple images into a cross-sectional view of body areas along any axis required. In addition, MRI produces clearer, more detailed images and provides information about chemical imbalances and changes within the cells.

3. In *Stedman's Medical Dictionary* (5th Unabridged Lawyers' Edition 1982), "tomography [computed t. (CT)]" is defined as follows: "computerized axial t.; the gathering of anatomical information from a cross-sectional plane of the body, presented as an image generated by a computer synthesis of x-ray transmission data obtained in many different directions through the given plane."

4. The petitioners submitted the following for "Project Name" upon the application for a certificate of need: "Addition of Mobile Magnetic Resonance Imaging (MRI) Unit by United Hospital Center (UHC) and transfer of operating responsibility for existing Full Body Mobile Computerized Tomography (CT) Unit to Davis Memorial Hospital (DMH)."

upon the acceptance and determination of completeness of all certificate of need applications for MRI units. Noting that several letters of intent and applications for MRI units had been received, the respondents indicated in the order that the moratorium was necessary because (1) MRI technology was new and costly, (2) the West Virginia State Health Plan [5] was silent upon the need for MRI units in this State and (3) the respondents needed time in which to develop standards concerning the use of MRI units in order that MRI certificate of need applications could be processed. The order stated: "proposals for large capital expenditures to purchase items of medical technology for which the State Health Plan does not yet make provision leaves the SHPDA [respondents] without guidance for and places at risk the effective development of necessary and adequate institutional health services...." [6]

The respondents expected to terminate the moratorium by April 1, 1985.

The petitioners contend that by declining to process their certificate of need application, by way of the moratorium, the respondents violated certain statutory and regulatory provisions applicable to West Virginia's public health certificate of need program. The petitioners assert that a timely review of their application has therefore been denied. The petitioners ask this Court to direct the respondents to determine the completeness of the petitioners' certificate of need application and, thereafter, review that application upon the merits of the proposed MRI acquisition.

## II

We are concerned in this action with the processing, under *W.Va.Code*, 16–2D–1 [1977], *et seq.*, of certificate of need applications. We are particularly concerned with the determination of completeness of those applications. As indicated below, the determination of completeness is a prerequisite to review of the merits of an application. Here, the completeness of the petitioners' certificate of need application for MRI services has never been determined.

Chapter 16 of the West Virginia Code is entitled "Public Health," and article 2D of that chapter is entitled "Certificate of Need." *W.Va.Code*, 16–2D–3 [1981], provides that "any new institutional health service may not be acquired, offered or developed within this State except upon application for and receipt of a certificate of need...." [7] As indicated by the provisions of *W.Va.Code*, 16–2D–1 [1977], the certificate of need requirement facilitates the policy of West Virginia that appropriate and needed institutional health services shall be made available in this State and that unnecessary duplication and costs of such services shall be avoided.

Pursuant to *W.Va.Code*, 16–2D–7 [1981], after the submission of a "letter of intent" to the West Virginia public health planning and development agency [the respondents], the applicant for a certificate of need may then file an application with that agency concerning the proposed new institutional health service. Subsection (f) of *W.Va. Code*, 16–2D–7 [1981], states in part: "Within fifteen days of receipt of application, the state agency shall determine if the application is complete." [8]

Section 10.01.(a) of the West Virginia Legislative Rules of the Board of Health,

---

5. "State health plan," pursuant to *W.Va.Code*, 16–2D–2(ii) [1981], "means the document approved by the governor after preparation by the statewide health coordinating council...." Generally, the needs and goals of this State, relating to health care, are set forth in the State Health Plan.

6. The order imposing the moratorium stated that the respondents would organize a task force "for the prompt development of appropriate standards" for use in processing MRI certificate of need applications.

7. "New institutional health service" is defined in *W.Va.Code*, 16–2D–3 [1981], and includes, *inter alia*, "[t]he acquisition of major medical equipment which will be owned or located in a healthcare facility...."

The parties have not disputed the requirement of a certificate of need for the acquisition of a MRI unit by a hospital located in West Virginia.

8. *W.Va.Code*, 16–2D–7(f) [1981], provides in full:

Within fifteen days of receipt of application, the state agency shall determine if the application is complete. The state agency shall seek

Chapter 16–2D, Series I (1983) (hereinafter "legislative rule"), provides guidance to the planning and development agency in determining the completeness of a certificate of need application: "Declaration of an application as being complete means that sufficient information is in the application for the State Agency to make an informed decision, not that the information in the application warrants an approval of the application."

After a determination that a certificate of need application is complete, the period of review of the application by the planning and development agency begins. *W.Va. Code*, 16–2D–7(g) [1981]; legislative rule 10.02. Generally, the review period must be completed within 90 days. *W.Va.Code*, 16–2D–7(k) [1981]. The agency then renders a final decision upon the question of whether the application warrants approval, denial or approval with conditions. *W.Va. Code*, 16–2D–9(c) [1981].[9] The final decision of the planning and development agency is subject to reconsideration and review under the provisions of *W.Va.Code*, 16–2D–7(t) [1981], and *W.Va.Code*, 16–2D–10 [1981].

As a result of the December 1984 moratorium, however, the initial step of the above-described procedures, i.e., the determination of completeness of the petitioners' MRI certificate of need application, was not accomplished. As the language of the moratorium order indicated, the moratorium resulted from a determination by the respondents that, existing procedures for the processing of applications notwithstanding, the respondents lacked sufficient time and adequate standards to evaluate proposed MRI acquisitions. As authority for the imposition of the moratorium, the respondents relied upon the language of *W.Va. Code*, 16–2D–5(e) [1981]:

For health services for which competition does not or will not appropriately allocate supply consistent with health systems plans and the state health plan, the state agency shall, in the exercise of its functions under this article, take actions, where appropriate to advance the purposes of quality assurance, cost effectiveness, and access and the other purposes of this article, to allocate the supply of such services.[10]

Nevertheless, this Court is of the opinion that the general language of *W.Va.Code*,

---

the advice of the designated health systems agency for the area in which the proposed new institutional health service will be located to determine if the application is complete and the state agency may request additional information from the applicant.

**9.** *W.Va.Code,* 16–2D–9(i) [1981], provides: "In the case of a final decision to approve or approve with conditions a proposal for a new institutional health service, the state agency shall issue a certificate of need to the person proposing the new institutional health service."
Furthermore, *W.Va.Code,* 16–2D–9(*l*) [1981], provides, in part:
If the state agency fails to make a decision within the time period specified for the review, the applicant may, within one year following the expiration of such period, bring an action, at the election of the applicant, in either the circuit court of Kanawha county, or with the judge thereof in vacation, or in the circuit court of the county in which the applicant or any one of the applicants resides or does business, or with the judge thereof in vacation to require the state agency to approve or disapprove the application.
It should be noted, with regard to *W.Va.Code,* 16–2D–9(*l*) [1981], that, as a result of the moratorium, a review period upon the petitioners'

MRI certificate of need application was never begun.

**10.** Although the respondents relied upon the provisions of *W.Va.Code,* 16–2D–5(e) [1981], as authority for the moratorium, the respondents did not in imposing the moratorium follow the rule-making provisions of the West Virginia Administrative Procedures Act, *W.Va.Code,* 29A–1–1 [1982], *et seq.* Although we deem a discussion of the imposition of the moratorium in terms of the Administrative Procedures Act to be unnecessary to the disposition of this action, we note the case, cited by the petitioners, of *Balsam v. Department of Health and Rehabilitative Services,* 452 So.2d 976 (Fla.Dist.Ct.App. 1984).
In *Balsam,* the appellants filed an application seeking a certificate of need to construct a 100-bed psychiatric hospital. The Florida Department of Health and Rehabilitative Services, however, replied that a temporary administrative moratorium had been imposed upon such applications to allow time for the promulgation of "rules on statewide bed-need methodologies." The District Court of Appeal of Florida held, nevertheless, that the moratorium constituted a "rule" that should have been adopted pursuant to the rule-making procedures of the Florida

16–2D–5(e) [1981], did not authorize the respondents to abandon the requirement of *W.Va.Code*, 16–2D–7(f) [1981], that the completeness of the petitioners' certificate of need application be determined within a 15-day period. In particular, the record indicates that if a review process (subsequent to the determination of completeness) had taken place, the respondents would have had opportunity under existing statutes and legislative rules to develop standards concerning MRI applications. A moratorium was not necessary.

The record indicates that the respondents did not follow the provisions of *W.Va.Code*, 16–2D–7 [1981], and related legislative rules, which specifically allow modification of the requirement that the review period for certificate of need applications be completed within 90 days. *W.Va.Code*, 16–2D–7(*l*) [1981], provides: "The state agency shall adopt criteria for determining when it would not be practicable to complete a review within 90 days." Moreover, *W.Va. Code*, 16–2D–7(u) [1981], provides: "The state agency may adopt regulations pursuant to section eight [*W.Va.Code*, 16–2D–8 [1981]] of this article for reviews and such regulations may vary according to the purpose for which a particular review is being conducted or the type of health services being reviewed." *See also W.Va.Code*, 16–2D–7(i) [1981]; *W.Va.Code*, 16–2D–7(p) [1981]; legislative rule 14.02.

With respect to the development of MRI standards, it should be noted that legislative rule 18.06, entitled "Use and Development of Standards," provides: "The State Agency may utilize and develop standards relating to the review criteria in the Code and these regulations. If a local or statewide standard is not available the State Agency may use nationally or commonly accepted standards, which the State Agency finds relevant and appropriate."

This Court holds that pursuant to *W.Va. Code*, 16–29B–11 [1983], the West Virginia Health Care Cost Review Authority was designated this State's public health planning and development agency, which agency has the responsibility of administering the West Virginia public health certificate of need program, *W.Va.Code*, 16–2D–1 [1977], *et seq.;* in particular, the duties of the planning and development agency include the determination of the completeness of, the review of and the rendering of a final decision upon certificate of need applications for new institutional health services. Furthermore, we hold that where an applicant sought a certificate of need under the provisions of *W.Va.Code*, 16–2D–1 [1977], *et seq.*, for the acquisition of a medical diagnostic service known as a mobile magnetic resonance imaging ["MRI"] unit, the West Virginia public health planning and development agency was required pursuant to *W.Va.Code*, 16–2D–7(f) [1981], to determine the completeness of the applicant's application within 15 days of the agency's receipt of the application, and the action of the agency in imposing a "moratorium" upon the determination of completeness of that, and similar, applications, in order that standards for the processing of "MRI" applications could be developed, was arbitrary and capricious, in view of existing statutes and legislative rules allowing opportunity for the development of "MRI" standards during the agency's regular review process.

Upon all of the above, the respondents are hereby directed to determine, as soon as possible, the completeness of the petitioners' application for a certificate of need concerning (1) the acquisition by petitioner United Hospital Center, Inc., of a MRI unit and (2) the transfer to petitioner Davis Memorial Hospital, Inc., of "operating responsibility" for a "Mobile Computerized Tomography (CT) Unit" owned by United. If the petitioners' application is determined by the respondents to be complete, the respondents shall process the application in a manner consistent with the principles of this opinion.

Writ granted.

---

Administrative Procedures Act. The Court in *Balsam* stated: "The pervasive and consistent effect of the moratorium upon those seeking certificates of need is in no way lessened by the moratorium's finite duration." 452 So.2d at 978.